**FEDERAL LAND BANK OF LOUISVILLE**
et al. v. MORRISON et al.
No. 9198.

Circuit Court of Appeals, Sixth Circuit.
Feb. 12, 1943.

J. F. Williamson, of Louisville, Ky., and Luther B. Yaple, of Chillicothe, Ohio (William C. Goodwyn and J. F. Williamson both of Louisville, Ky., on the brief), for appellant Federal Land Bank of Louisville.

Luther B. Yaple, of Chillicothe, Ohio, for appellant Citizens National Bank of Chillicothe.

Elmer McClain, of Lima, Ohio, for appellees.

Before ALLEN, HAMILTON and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from an order of the District Court in farmer-debtor proceedings, directing that certain funds and chattels derived from the estates of the appellees and in the possession of Louis Rehfuss and R. Lee Riley, who were assuming to

act as receivers thereof, be turned over to appellee Florence Morrison individually and as executrix of the estate of her husband, Maurice Morrison, deceased. The properties involved, all situated in Ross County, Ohio, are the Higby farm of approximately 650 acres, owned by Maurice Morrison and Florence Morrison as tenants in common, the Anderson farm of approximately 200 acres, and the Mace farm of approximately 50 acres, both owned by Maurice Morrison.

The appellant Federal Land Bank of Louisville, John P. Phillips, Jr., and the Virginia Joint Stock Land Bank, hold first mortgages upon the Higby farm, and the Anderson andMace farms respectively. All three tracts are encumbered by a blanket second mortgage in favor of appellant the Citizens National Bank of Chillicothe, Ohio. This mortgage purported to pledge the rents and profits as well as the land itself as security for the debt, and the mortgage upon the Higby farm provided for the appointment of a receiver to collect the rents and profits upon the commencement of a suit in foreclosure thereof. The receiverships in question were instituted in 1933, a receiver for the Anderson farm being appointed by a state court pending foreclosure proceedings thereon and a receiver for the other two farms being subsequently placed in possession pursuant to a contract entered into upon May 25, 1933, by Florence Morrison, Maurice Morrison, and the Citizens National Bank of Chillicothe. By the terms of this contract it was agreed that Edward Higby should act as receiver for the Mace farm and Higby farm, that title to the crops grown on the farms should be in the name of the receiver, and that the income received by the receiver should be used to pay insurance, taxes, make repairs, and compensate the receiver, and the balance should be applied in payment of the first mortgages.

Maurice Morrison and Florence Morrison filed petitions in bankruptcy under § 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, on February 9 and February 11, 1935, respectively, which were duly approved by the court and were referred to the conciliation commissioner for Ross County, who reported on March 29, 1935, that efforts to obtain the creditors' acceptance of a composition or extension had failed. Upon the same day both debtors filed petitions praying for a moratorium under original § 75, sub. s, and were adjudicated farmer-debtor bankrupts. After original § 75, sub. s, had been held unconstitutional (Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106), and after enactment of the present § 75, sub. s, the debtors on September 16, 1935, moved that these proceedings be reinstated, and the court reinstated them. The creditors opposed the reinstatement, and the debtors filed repeated motions contesting the motions of the creditors and praying for possession. The petitions were finally dismissed by the District Court on August 11, 1938, and the order was affirmed by this court [Morrison v. Federal Land Bank of Louisville, 6 Cir., 105 F.2d 279], but that decision was reversed by the Supreme Court (308 U.S. 524, 60 S.Ct. 292, 84 L.Ed. 443). The District Court, in compliance with the mandate of the Supreme Court, on February 20, 1940, again reinstated the debtors' petitions, and after the filing of formal amended petitions, orders of adjudication and reference were once more entered and the debtors were put in possession. The appraisers' report was not confirmed until November 12, 1940, when an order was made which fixed the yearly rental value at $1,966 for the Higby farm, $983 for the Anderson farm and $290 for the Mace farm. The date for the first payment of rent to be due was then set for November 12, 1941, and all proceedings against the appellees were stayed. Applications were made by the various creditors, seeking disbursement of the funds and sale of the produce of the three farms in the hands of Rehfuss and Riley, and application of the proceeds to the mortgage debts, while Mrs. Morrison prayed that the proceeds be disbursed to her individually and as executrix of her husband's estate. The proceedings were then pending before conciliation commissioner Hughes, who ordered that the funds and the produce be turned over to Mrs. Morrison, and the substance of this order was confirmed by the order of the District Court from which the present appeal was taken.

As a basis for the order of disbursement, the District Court found that after the jurisdiction of the bankruptcy court attached on February 9 and February 11, 1935, Rehfuss assumed to act as receiver in charge of the Anderson farm and that Riley assumed to act as receiver in charge of the Higby farm and the Mace farm. The court concluded in effect that any receiv-

ership authorized by the state court or previously agreed upon by the parties terminated when jurisdiction of the bankruptcy court first attached.

The court ordered Rehfuss to turn over to Mrs. Morrison $2,223.64 in money and some 575 bushels of wheat and about 200 bushels of corn from the Anderson farm, and ordered Riley to turn over to Mrs. Morrison $2,888.13 and some 2,000 bushels of corn from the Higby farm and $188.30 and about 200 bushels of corn and some 65 bushels of wheat from the Mace farm.

The sum of $2,500, proceeds of condemnation proceedings against the Higby farm and the further sum of $3,066.30 out of the produce of the Higby farm had theretofore been turned over to the Federal Land Bank of Louisville, appellant. The court ordered that these sums be retained by the bank and credited upon the indebtedness evidenced by its proof of claim. It likewise ordered that the sum of $1,750 paid to the Citizens National Bank of Chillicothe, Ohio, from the produce of the Anderson farm be paid over to John P. Phillips, Jr., the holder of the first mortgage thereon, and credited upon the indebtedness. It allowed compensation of $526.94 to Riley, one-half to be paid by the Federal Land Bank of Louisville, and the other half to be paid by Mrs. Morrison, and compensation to Rehfuss in the sum of $200.78, one-half to be paid by Phillips and the other half to be paid by Mrs. Morrison.

■ Appellants attack the order on the ground that the filing of a petition seeking relief under subsections a–r of § 75 of the Bankruptcy Act does not entitle a debtor who has voluntarily surrendered possession of real estate to the immediate possession thereof and to the rents, issues and profits of the land, and upon the further ground that the holding of the court abrogates the express written agreement executed prior to the filing of the petitions under which the debtors voluntarily surrendered possession and agreed that the rents and profits should belong to the secured creditors. This statement of the question is premised upon the proposition that these cases have been pending under subsection s, only since February 20, 1940, when they were reinstated by the District Court in compliance with the mandate of the Supreme Court. This premise, unfortunately for appellants' case, is unsound. The farmer-debtors filed their petitions under subsection s on March 29, 1935. After

original § 75, sub. s, was held unconstitutional, the present § 75, sub. s, was enacted on August 28, 1935. This section expressly requires that all farmer-debtor cases dismissed because of the Supreme Court's decision in the Radford case, supra, should be "promptly reinstated." In accordance with the statute and with appellees' applications, the proceedings of the farmer-debtors were reinstated on September 16, 1935. The petitions therefore were reinstated by virtue of the statute and by the order of the bankruptcy court on September 16, 1935, as well as by the order of February 20, 1940. The reinstatement dates back to the time of original filing, March 29, 1935, and the debtors' petitions have been pending under § 75, sub. s, during practically the entire period involved in the litigation. The question actually presented, therefore, is whether under subsection s, the debtors were entitled in March, 1935, to possession and the rents and profits, and whether their consent to the receivership and their execution of the contract which pledged the rents and profits deprives them of the right to possession and to the produce of the land under subsection s.

Mrs. Morrison denies consenting to the appointment of the receivers, and in that connection attacks the validity and effect of an order made by conciliation commissioner Davis of Ross County, on March 2, 1935, which stated that the debtors and all secured creditors of the bankrupt agreed that Riley should serve as receiver for the Higby and Mace farms and A. W. Hamill as receiver for the Anderson tract, until further agreement.

■ The record is somewhat confused and contradictory as to this point. An instrument was introduced in evidence which was represented to be the original of such an order in the Maurice Morrison case. A nunc pro tunc entry was also introduced, claimed to apply to Mrs. Morrison's case, which embodied the identical language of the first instrument. Neither was filed until March 9, 1940. The testimony of conciliation commissioner Davis as to the preparation of such orders, however, tends to support the finding of conciliation commissioner Hughes that an order was entered on March 2, 1935, purporting to appoint a receiver for the three farms by consent of the debtors and the scheduled creditors. Since this finding was confirmed by the District Court and is not clearly erroneous, we accept it as true.

Giving it full effect, however, we think it has little bearing except in so far as it evidences consent of the parties to the receiverships. The original farmer-debtor statute, § 75, subs. a–r, in force at the time of the appointment, makes no provision for appointment and no reference to a receiver. Hence the appointment, if valid and if limited by statute, must be governed by the provisions of the general bankruptcy law and General Orders in Bankruptcy then in effect. But this order of March 2, 1935, does not comply, in material respects with the requirements of the general bankruptcy law as to appointment of receivers, nor with certain of the applicable General Orders. It does not find that the appointment is "absolutely necessary" (§ 2 of the Bankruptcy Act, 11 U.S.C.A. § 11), nor does it define the "limited period" for which the receiver is to operate [§ 2, sub. a(5)]. While appellants contend that under the contract of May 25, 1933, Higby had the duties and powers of an active trustee, it does not appear that he qualified by giving bond with approved sureties, as required of trustees by § 50, sub. b, 11 U.S.C.A. § 78, sub. b. The duties and the compensation of the receivers were at no time defined or described, much less "enlarged" by any court order. Since this was true, these receivers at best were mere custodians (General Order 40). The receivers are not shown to have complied with the statute in seeking compensation for services (General Order 42), and to this lack we may doubtless ascribe the fact that these receivers, who were no more than custodians, retained for themselves without the formality of application to and approval by the court, from five to twenty times the amount which represents the compensation of a custodian under § 48, sub. d, of the Bankruptcy Act, 11 U.S.C.A. § 76, sub. d.

■ We deem it unnecessary, however, to decide whether the provisions of the general bankruptcy law with respect to receiverships apply to cases arising under farmer-debtor proceedings, for the petitions filed February 9 and 11, 1935, subjected the farmers and their property "to the exclusive jurisdiction of the [bankruptcy] court" [§ 75, sub. n]. Moreover, after March 29th of the same year the receivers were "divested of possession" under § 75, sub. s(4) and the property was required to be returned to the possession of the farmers under the provisions of the

Act. All acts of Riley, Rehfuss and his predecessor Hamill, subsequent to March 29, 1935, were therefore done without authority of law, and the District Court correctly held that after this time Riley, Hamill and Rehfuss assumed to act as receivers.

■ This is true irrespective of the consent agreement. The debtors and creditors could not waive nor modify the provisions of § 75. Trego v. Wright, 6 Cir., 111 F.2d 990. A similar stipulation between secured creditor and debtor, dealing with the disposition of the proceeds of crops harvested on the debtor's premises, was held by the Supreme Court in Borchard v. California Bank, 310 U.S. 311, 317, 60 S. Ct. 957, 84 L.Ed. 1222, to be part of a "procedure not contemplated by the statute." The Supreme Court in that case held that the District Court was required to fix the terms under which the debtors would remain in possession in conformity with § 75, sub. s. In Adair v. Bank of America Nat. Trust & Savings Ass'n, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889, the Supreme Court declared that a creditor holding a mortgage on future crops had no right to have the gross proceeds of such a crop paid over to it after the debtor had instituted proceedings under § 75, subs. a–r.

■ Under Ohio law the debtors had a substantial property right in the equity of redemption. Hoyd v. Citizens Bank of Albany Co. 6 Cir., 89 F.2d 105, 107, 108; McArthur v. Franklin, 16 Ohio St. 193; Sun Fire Office of London v. Clark, 53 Ohio St. 414, 42 N.E. 248, 38 L.R.A. 562; Commercial Bank & Sav. Co. v. Woodville Sav. Bank Co., 126 Ohio St. 587, 186 N.E. 444. Cf. State Bank of Hardinsburg v. Brown, 63 S.Ct. 128, 87 L.Ed. ——, decided November 16, 1942. The bankruptcy court had exclusive jurisdiction of this property and of the proceeds from it, namely, the rents and profits. The fact that the debtors had been out of possession five years, due to the protracted litigation of the mortgagees, would be immaterial even if the delay were due to the acts of the debtors. Wright v. Logan, 315 U.S. 139, 62 S.Ct. 508, 86 L.Ed. 745. Here, however, the appellees sought diligently during all of this period to regain possession, and the contention that because they were kept out of possession they should be deprived of the benefits of the remedial provisions of § 75, sub. s, has no merit. It is in fact the

purpose of the farmer-debtor statute to maintain the farm "as a going concern" (Adair v. Bank of America Ass'n, supra, 303 U.S. at page 357, 58 S.Ct. at page 598, 82 L.Ed. at page 894); but the farm cannot be so maintained unless the debtor is permitted to have possession and to operate the property after the filing of the petition in bankruptcy. Retention of possession by the debtor, since it is subject to the control and direction of the court, and subject to the requirement that the debtor pay a reasonable rental, does not result in an unconstitutional deprivation of the creditors' property. Wright v. Vinton Branch Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. The statute contemplates that the debtor remain in possession upon terms which are equitable to him and his creditors, and under a stay which will assure him. of his possession for three years from date of the order. Borchard v. California Bank, supra. We are cited to no decision which holds that a debtor should be penalized by having the rents and profits which accrue while he is unlawfully kept out of possession applied to the payment of mortgage debts.

Appellants contend in effect that the secured creditors should be given all that remains of proceeds of the crops from the farms and the grain unsold for the five years that they kept the appellees out of possession. The fact that the court has ordered that the first mortgagees be allowed to retain some $4,750 from the avails of the produce of two of the farms shows that their interests were not ignored.

Under § 75, sub. s, and the adjudications of the Supreme Court the District Court has a broad discretion in administering a debtor's estate for the protection of the rights of both debtor and creditors. It would be extremely difficult to frame an abstract rule covering all the factors properly to be considered in such cases and the weight to be accorded each of them. There is nothing in this case to show that the District Court, which was in a far better position than this court to consider all the relevant evidence and to accord it due weight, did not properly appraise all the material factors in the case. No abuse of discretion in the issuance of the order is shown.

The order is affirmed.