**In re WAGNER.**

**No. 15816.**

District Court, D. Minnesota,
Fourth Division.

Feb. 21, 1946.

482

W. F. Odell, of Chaska, Minn., for creditor, in support of said motion.

Howard L. Hall, of Waconia, Minn., for farmer-debtor, in opposition thereto.

NORDBYE, District Judge.

For many years prior to March 17, 1941, Herbert C. Wagner, the farmer-debtor herein, owned a farm which was incumbered with a mortgage held by the State of Minnesota. On March 17, 1941, he was in default upon that mortgage in the sum of $9,763.74, including interest; so on that date the State commenced a foreclosure proceeding against the farm. At that foreclosure sale, the farm was duly sold to one A. J. Spanjers, the moving creditor herein. He received a sheriff's certificate of sale, which was promptly filed on May 12, 1941.

On April 11, 1942—one month prior to the expiration of the period of redemption—the debtor filed in this Court a petition seeking this Court's authorization of a composition and extension of time to pay his debts, pursuant to Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203. This Court approved the petition on April 13, 1942, and referred the matter to the Conciliation Commissioner for Carver County, Minnesota, where the farm was located. The debtor submitted to his creditors, including Spanjers, an extension proposal by which, among other things, he offered to pay each secured creditor the full amount of his claim, together with one and one-half per cent interest per annum, on or before three years from the date on which the Court confirmed this extension offer. The proposal was accepted by creditors constituting a majority in number and amount. And this Court, after proper proceedings were had, confirmed the extension agreement on October 12, 1942. During the continuance of the extension period, the debtor paid the property taxes and all his creditors except Spanjers, whose claim had been allowed by the Commissioner in the amount of $10,544.60. Spanjers only received interest payments in April and November, 1943, and in April and October, 1944. No interest was paid to him in April of 1945, although on October 16, 1945—four days after the extension agreement terminated by its terms—the debtor paid Spanjers the interest which had not been paid during the extension period. None of the principal ever was paid Spanjers by the debtor or anyone else. The extension period granted by the Court expired by its terms on October 12, 1945.

Although the extension period granted by the Court expired by its terms on October 12, 1945, no one apparently did anything about it until November 3, 1945. At least, the record shows no action. On November 3, 1945, Wagner filed in this Court an amended petition, stating that he felt aggrieved by the extension proposal and asked to be adjudged a bankrupt pursuant to Section 75, sub. s and to be permitted to proceed thereunder. On the same day, this Court made its order dismissing the conciliation proceedings under Section 75, subs. a to r, granted Wagner leave to proceed under Section 75, sub. s, 11 U.S.C.A. § 203, sub. s, and adjudged him a bankrupt. The only asset which the bankrupt seeks to have administered under the Act is the real estate under foreclosure.

The motion to dismiss the Section 75, sub. s, proceedings followed on December 26, 1945. It is based upon the premise that,

In light of the circumstances herein, this Court lacked the power and right to grant the petition for the Section 75, sub. s, proceedings. The moving creditor contends that the extension of the period of redemption under the mortgage foreclosure sale, pursuant to Section 75, sub. n, terminated on October 12, 1945, the date of the expiration of the period of extension granted to the debtor under Section 75, subs. a to r. If the farmer-debtor had no rights to the foreclosed real estate which could be administered under Section 75, sub. s, then these proceedings should be dismissed, in that there would be no assets for the bankruptcy court to administer. It is recognized that the debtor had an interest in the real estate when the petition under Section 75, subs. a to r was filed. The time to redeem had approximately a month to run, and Subsection n of Section 75, 11 U.S.C.A. § 203, sub. n, expressly provides: "In all cases where, at the time of filing the petition, the period of redemption has not or had not expired, * * * the period of redemption shall be extended * * * for the period necessary for the purpose of carrying out the provisions of this section."

If title to this real estate passed to the creditor under state law after the termination of proceedings under Section 75, subs. a to r, this Court cannot reinstate the case and again obtain jurisdiction. Union Land Bank v. Byerly, 310 U.S. 1, at page 8, 60 S.Ct. 773, 84 L.Ed. 1041; Wharton v. Farmers & Merchants Bank, 8 Cir., 1941, 119 F.2d 487, 489; compare In re Price, 7 Cir., 1938, 99 F.2d 691, and Reber v. H.O.L.C., 8 Cir., 1938, 96 F.2d 77. The period during which Wagner could have redeemed under Minnesota law as such expired long before October, 1945, and, in so far as Minnesota law is concerned, title passed at the end of the state statutory period of redemption. See Minnesota Stat. of 1941, § 580.23; Minn.Stat. of 1941, § 580.12; Tomasko v. Cotton, 1937, 200 Minn. 69, 72, 273 N.W. 628. The state statute governing redemption does not appear to have been tolled in the strict sense by Section 75. Consider Union Land Bank v. Byerly, 310 U.S. 1, 60 S.Ct. 773, 84 L.Ed. 1041; note 99 A.L.R. 1403. It was only "extended" for a period necessary for the purposes of Section 75. 11 U.S.C.A. § 203, sub. n.

So the instant case resolves itself into the question, Did the expiration of the composition and extension agreement prior to the filing of the amended petition for Subsection s proceedings automatically terminate all the proceedings under Section 75? If it did not, then the Court still possesses jurisdiction, for fulfillment of the purposes and provisions of the Act still remain to be accomplished. And Subsection n thereof extends the Court's jurisdiction over this real estate until the proceedings thereunder terminate.

The proceedings under Section 75, and the Court's jurisdiction over them, are commenced by the filing of the original petition provided for in Subsections c and n. 11 U.S.C.A. § 203, subs. c, n; Kalb v. Fuerstein, 1938, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370. The submission of the composition and extension agreement is only a part of the proceedings concerning which the court exercises its powers under Section 75, and the confirmation or refusal of the plan does not deprive the court of any powers or automatically terminate the proceedings. Subsection s permits the filing of an amended petition, and when that petition is granted, the debtor can enjoy the benefits of that subsection. As stated by the Circuit Court of Appeals for the Ninth Circuit in Cohan v. Elder, 1940, 112 F.2d 967, at page 970: "75, a to s, inclusive, is a single proceeding with alternative relief to the debtor." Bradford v. Fahey, 4 Cir., 1935, 76 F.2d 628, 638, reversed on other grounds, 4 Cir., 77 F.2d 992, Leonard v. Bennett, 9 Cir., 1940, 116 F.2d 128, 132, and Island Improvement Co. v. Holman, 10 Cir., 1938, 99 F.2d 63, 67, reach the same conclusion. The soundness of the conclusion is obvious from the very words of the section. For the subsections thereof consistently refer to "this section", not to proceedings under Subsection s or under Subsections a to r. Subsection s must be read with the provisions in a to r in order to have any real meaning. The proceedings for a composition and extension agreement must precede the institution of proceedings under Subsection s by the terms of the section. The petition under Subsection s is not an original petition. It is an amended petition, and no clerk's fee is charged for the filing of that amended petition. Jurisdictional allegations may be drawn from the original petition if the amended petition is defective in that regard. Leonard v. Bennett, 9 Cir., 1940, 116 F.2d 128, 132.

From the premise that these subsections create a single proceeding, it seems

484

necessarily to follow that the mere termination of part of that single proceeding was not intended by Congress to terminate the entire proceedings. For no time limit was placed upon the debtor's right to petition for proceedings under Subsection s. He may petition if he fails to make an agreement with the creditors or if he feels aggrieved by the agreement after it is made. The Act does not expressly or by clear implication show that the debtor's right must be exercised prior to the termination of the extension agreement. 11 U.S.C.A. § 203, sub. s. Moreover, Subsection n provides that the period of redemption be extended for a period necessary for the purpose of carrying out the provisions of Section 75. Obviously, Subsection s is a provision of Section 75, and could not be carried out if the expiration of the extension agreement automatically terminated all the debtor's rights under Section 75. These provisions show by their plain and literal meaning that Congress did not intend the single and continuing proceedings under Section 75 to terminate automatically until the provisions and purposes of the section were accomplished. They show that Congress intended that the debtor should be able to exhaust all permitted means of adjustment with his creditors under Section 75 as a whole.

The provisions of the Act must be interpreted liberally. John Hancock Mutual Life Ins. Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176; Wright v. Union Central Ins. Co., 311 U.S. 273, 279, 61 S.Ct. 196, 85 L.Ed. 184; Wright v. Logan, 315 U.S. 139, 141, 62 S.Ct. 508, 86 L.Ed. 745. As the United States Supreme Court held in Wright v. Union Central Ins. Co., supra, the benefits of the Act cannot "be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act." [311 U.S. 273, 61 S.Ct. 200.] Under this Act, the court held, the creditor "is in no position to insist that doubts or ambiguities in the Act be resolved in its favor and against the debtor." This view was reaffirmed expressly in Wright v. Logan, supra. If the creditor's contention here were sustained, the Subsection s proceedings—which are an integral part of Section 75 and its purposes —could not be commenced as to this real estate if sought even one day after expiration of the composition and extension agreement, although the creditor herein concedes that the Court could have granted the proceedings one day before the expiration of the agreement. If the creditor's contention is to be sustained, the purposes of the Act could be plainly and easily frustrated. A strict and technical construction causing such a situation cannot be adopted in view of the liberal construction authorized and decreed by the Supreme Court.

So it seems clear that the proceedings under Section 75 must be viewed as a single, continuing proceeding which Congress intended to continue without termination, in the absence of dismissal or abandonment, until the purposes of the section were accomplished, with no definite time limit set, after the proceedings were concluded under Subsections a to r, when the petition for relief pursuant to Subsection s should be made to the Court. And in view of these premises, it seems necessary to conclude that the expiration of the a to r extension agreement in the instant case did not automatically terminate all the proceedings and all the debtor's rights under Section 75. It only created a lapse of definite action in an indivisible and continuing proceeding.

The failure of the debtor to file an amended petition during the period of extension proceedings does not show that they were terminated by his actions. Although his failure to carry forward with the remainder of the proceedings promptly might justify a dismissal under some circumstances, upon the ground of abandonment or some other theory, no basis for dismissal appears here. There is no satisfactory showing that the debtor intended that the proceedings be dropped or that he did not act with reasonable promptness (if promptness is material). See Wright v. Logan, 315 U.S. 139, 62 S.Ct. 508, 86 L. Ed. 745. No steps were taken by the creditor to obtain a dismissal of the proceedings between October 12, 1945, and November 3, 1945, when the amended petition was filed herein. As far as the record indicates, the farmer-debtor endeavored in good faith to comply with the extension agreement which he proposed. During the three-year period, he had paid all the other secured creditors and had paid the amount of interest on the foreclosed mortgage, which he had agreed to do in his extension proposal. He found that he was unable to refinance himself so as to enable him to pay the amount due on the foreclosed mortgage within the extension period under Subsec-

tions a to r. Under these circumstances, merely because the debtor may have already received the benefits of the Act under these subsections, it does not follow that the Court can refuse him further relief under Section 75. Wright v. Logan, supra. The Act says that any farmer who "feels aggrieved by the composition and/or extension, may amend his petition or answer, asking to be adjudged a bankrupt." The debtor bases his amended petition on this provision of the Act. No laches appears which would justify the Court's refusal to entertain the amended petition. The situation here seems, in principle, very much like the situation in Wright v. Logan, supra. There, the petition of the farmer-debtor was first filed under Section 74, 11 U.S.C.A. § 202, a day before the time to redeem would expire. Apparently, the time to redeem was kept alive by reason of an oral agreement between the parties, and when the farmer failed to obtain relief under Section 74, he filed on April 5, 1935, under Section 75, subs. a to r. Efforts to effect a composition or extension apparently failed, and on March 2, 1940, he filed an amended petition under Section 75, sub. s. The District Court dismissed, and the Circuit Court of Appeals affirmed, 119 F.2d 354, holding that "if a farmer debtor fails to prosecute his composition proceedings to a conclusion within a reasonable time, the court can deny him the privilege of adjudication under 75, sub. s; and that although these farmer debtors had filed under other subsections of 75, they had already enjoyed all the benefits to which they would have been entitled under 75, sub. s, and therefore were not entitled to obtain a repetition of those benefits by what the court thought was a mere formal change in their petition." (315 U.S. 141, 62 S.Ct. 509.) It was under these circumstances that the Supreme Court stated: "Farmers cannot be deprived of the benefits of the Act because a court may believe that they have received the equivalent of what it prescribes." (315 U.S. 142, 62 S.Ct. 509.) And in reversing the Circuit Court of Appeals because of its holding that the farmers had lost their rights to proceed under Section 75, sub. s, the court stated (page 142 of 315 U.S., page 510 of 62 S.Ct.):

"* * * It is nevertheless appropriate to point out at this time that whatever right of redemption the petitioners had when they first applied for adjudication under 75 continued to be a part of their as-

sets, subject to administration by the bankruptcy court. For 75, sub. n subjects all of the farmer debtor's assets, specifically including rights of redemption, to the jurisdiction of the bankruptcy court, and provides that 'the period of redemption shall be extended * * * for the period necessary for the purpose of carrying out the provisions of this section.'"

This Court having obtained jurisdiction of the proceeding instituted under Section 75 when the petition under Subsections a to r was filed, and such proceedings never having terminated, this Court's jurisdiction was retained and was not lost by the failure of the farmer to carry out successfully his extension agreement under Subsections a to r. The debtor's amended petition for Subsection s proceedings was properly granted. The time to redeem being extended by virtue of Subsection n, it remains an asset of the farmer-debtor subject to the administration of the bankruptcy court, and upon filing the petition under Section 75, sub. s, that asset is now properly before the bankruptcy court for administration under that section. The motion to dismiss is therefore denied. It is so ordered.

An exception is reserved to the moving creditor.